UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRENDON LEE YOUNGS,

                              Plaintiff,            Case # 18-CV-119-FPG

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Brendon Lee Youngs seeks review of the decision of the Social Security Administration ("SSA") to terminate his Supplemental Security Income ("SSI") benefits. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 15. For the reasons that follow, the Commissioner's motion is GRANTED and Youngs's motion is DENIED.

## BACKGROUND

Youngs received SSI benefits as a child. When he turned 18 years old, the SSA reviewed his case under the adult disability standard and determined that he was no longer disabled as of November 11, 2014. Tr.[1] 101-04; *see* 42 U.S.C. § 1382c(a)(3)(H). Youngs disputed this determination and appeared before Administrative Law Judge John P. Costello ("the ALJ") for a hearing. Tr. 28-78. On December 20, 2016, the ALJ issued an unfavorable decision. Tr. 85-95. After the Appeals Council denied his request for review, Youngs appealed to this Court. Tr. 1-7; ECF No. 1.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 9.

# LEGAL STANDARD

## I. District Court Review

In reviewing a final decision of the SSA, it is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the

"Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant retains the RFC "to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ analyzed whether Youngs remained disabled as of November 11, 2014, or whether his disability ended in accordance with the SSA's redetermination. In conducting that evaluation, the ALJ found that Youngs has several severe impairments—attention deficit hyperactivity disorder, oppositional defiant disorder, learning, adjustment, and mood disorders, and asthma—but that those impairments, alone or in combination, do not meet or medically equal the criteria of any Listings impairment. Tr. 87-89.

Next, the ALJ determined that Youngs retains the RFC to work at all exertional levels; can tolerate occasional exposure to respiratory irritants; can engage in simple, routine tasks; and can occasionally interact with coworkers but cannot interact with the public. Tr. 89-93. At step four, the ALJ indicated that Youngs has no past relevant work. Tr. 93. At step five, he found that Youngs can adjust to other work that exists in significant numbers in the national economy. Tr. 93-94. Thus, the ALJ concluded that Youngs's disability ended on November 11, 2014 and that he did not become disabled again after that date. Tr. 94-95.

## II. Analysis

Youngs argues that the Court should remand this case because (1) a portion of the RFC determination is not supported by substantial evidence; and (2) the ALJ, and later the Appeals Council, erred with respect to the Listings. ECF No. 11-1 at 14-23. The Court addresses each argument below.

### A. RFC Determination

First, Youngs argues that the RFC determination is not supported by substantial evidence because he cannot occasionally interact with coworkers and the ALJ did not consider his tendency to have violent outbursts. *Id.* at 14-17.

A claimant's RFC reflects what he "can still do despite [his] limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). ALJs "weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order).

The RFC determination that Youngs can occasionally interact with coworkers is supported by substantial evidence. Specifically, it is supported by the opinions of consultative examiner

Kristina Luna, Psy.D., Youngs's reports to Dr. Luna about his interactions with others, and the ALJ's consideration of evidence indicating that Youngs had some issues in this area.

Dr. Luna evaluated Youngs in 2014 and 2016, and she indicated at both examinations that Youngs's "[m]anner of relating and overall social skills were adequate." Tr. 857, 1142. In 2014, Youngs reported to Dr. Luna that he had friends that he liked to spend time with, and she opined that he had an unlimited ability to interact with others. Tr. 858. In 2016, Youngs reported to Dr. Luna that he did not have any friends but that he was close with family members, and she opined that he was only mildly limited in his ability to relate adequately with others. Tr. 1143-44.

The ALJ afforded "some weight" to Dr. Luna's opinions because he found them inconsistent with record evidence demonstrating that Youngs is "more than mildly limited" in his ability to interact with others. Tr. 92. The ALJ noted that Youngs was discharged from treatment with his primary care provider because he used inappropriate language and that Youngs and his mother testified that he has anger issues that interfere with his ability to interact with others. Tr. 92; *see also* Tr. 45, 47, 64, 66-67, 914-15. The ALJ also considered and afforded "partial weight" to the opinions of two medical consultants who reviewed Youngs's record and opined, among other things, that he has moderate limitation in his ability to get along with coworkers. Tr. 92 (citing Tr. 885, 958).

The ALJ also summarized and considered Youngs's testimony, including his assertion that his outbursts prevent him from engaging appropriately with others. Tr. 90. In assessing the consistency of Youngs's statements with the record evidence, however, the ALJ offered numerous reasons for discounting his allegations,[2] and Youngs does not argue that the ALJ erred in this regard.

---

[2] Because a claimant's statements about his symptoms and their limiting effects will not alone establish disability, the ALJ evaluates those statements by considering a variety of factors, such as the claimant's daily activities and treatment

In light of all of the above, the ALJ reasonably concluded that Youngs could occasionally interact with coworkers.

Youngs also asserts that the ALJ failed to consider his "tendency toward violent outbursts." ECF No. 11-1 at 15-16. But the ALJ acknowledged Youngs's testimony that he engaged in violent behaviors when he was in school, acted out at home, and was arrested for assault when he got into a fight with his mother, and the ALJ discounted those statements for several reasons, which Youngs does not dispute. Tr. 90. The record reveals that Youngs had violent and disruptive episodes when he was in seventh, eighth, and ninth grades (Tr. 40-43, 305), but does not suggest that he had violent episodes during the relevant period (November 11, 2014 and beyond). Moreover, no medical provider indicated that Youngs has issues with violence or that explosive behavior would impact his ability to work.

Although Youngs cites record evidence that he believes supports a more restrictive RFC, the Court is not concerned with whether substantial evidence supports his position; rather, the Court must decide whether substantial evidence supports the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). It was up to the ALJ to resolve conflicts in the record, and Youngs has not persuaded the Court that the RFC determination is not supported by substantial evidence. *See, e.g.*, *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence").

### B. The Listings

Second, Youngs argues that the ALJ erred at step three when he found that his impairments did not meet or medically equal Listing 12.05C, which relates to intellectual disability. ECF No.

---

history. *See* 20 C.F.R. § 416.929(a), (c)(1), (c)(3) (effective June 13, 2011 to Mar. 26, 2017); *see also* SSR 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016).

11-1 at 17-19. Additionally, Youngs asserts that the Appeals Council should have evaluated his impairments under the revised Listings. *Id.* at 20-23.

### 1. The ALJ's Decision

At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment. 20 C.F.R. § 416.920(a)(4)(iii).

To meet Listing 12.05C, the claimant must demonstrate: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) another severe physical or mental impairment." *Gonzalez-Cruz v. Comm'r of Soc. Sec.*, 294 F. Supp. 3d 164, 185 (W.D.N.Y. 2018) (citation omitted); *see* 20 C.F.R. Part 404, Subpart P, App'x 1 at § 12.05.[3]

It is undisputed that Youngs satisfies the second and third requirements—the ALJ found that Youngs had a valid full-scale IQ score of 70 and other severe impairments. Tr. 87, 89. The ALJ determined, however, that Youngs did not demonstrate the requisite deficits in adaptive functioning to meet Listing 12.05C, a determination that Youngs asserts was improper.[4]

Adaptive functioning refers to an individual's "ability to cope with the challenges of ordinary everyday life." *Gonzalez-Cruz*, 294 F. Supp. 3d at 185 (citing *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012)). A court considers many abilities when it evaluates adaptive functioning, including the individual's social, communication, and daily living skills. *Id.* (citation

---

[3] The ALJ rendered his decision on December 20, 2016, and therefore the Court considers the version of Listing 12.05 that was in effect at that time. The SSA later revised Listing 12.05, and those changes became effective on January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). The SSA has explained that it "expect[s] that Federal courts review [its] final decisions using the rules that were in effect at the time [it] issued the decisions." *Id.* at 66138 n.1; *see also*, *e.g.*, *Rosa v. Comm'r of Soc. Sec.*, No. 17 Civ. 3344 (NSR)(JCM), 2018 WL 5621778, at *14 (S.D.N.Y. Aug. 13, 2018); *Gonzalez-Cruz*, 294 F. Supp. 3d at 185 n.10.

[4] Youngs did not turn 22 years old until April 28, 2018, after the ALJ rendered his decision. Therefore, the evidence that the ALJ considered and the Court reviews necessarily related to whether Youngs had deficits in adaptive functioning before he attained age 22.

omitted). An ability to live alone, care for others, prepare meals, pay bills, communicate, and perform other daily activities "generally demonstrates adaptive functioning," while enrollment in special education classes, an inability to graduate, or difficulties in reading, writing, or math "suggest deficits in adaptive functioning." *Id.* (collecting cases).

Substantial evidence supports the ALJ's conclusion that Youngs's did not have the requisite deficits in adaptive functioning to meet Listing 12.05C. As the ALJ pointed out, Youngs testified that he lived alone in an apartment, searched for jobs but could not get one because he did not have a high school degree, could pay bills, and surf the internet.[5] Tr. 89 (citing Tr. 36-38, 43). The ALJ also considered Youngs's report to Dr. Luna that he could take public transportation independently, prepare food in the microwave, surf the Internet, and play games on his phone. *Id.* (citing Tr. 1144, 1148). Finally, the ALJ relied on Dr. Luna's opinions that Youngs has "good adaptive functioning skills in all areas" and that her testing revealed only mildly impaired attention and concentration skills and intact memory skills. *Id.* (citing Tr. 858, 1143, 1148).

Moreover, although Youngs attended special education classes, did not graduate high school, and struggled in reading, writing, and math, he can cook, clean, shower, and dress himself every day, shop once a month, watch television, play sports, and spend time with his friends and girlfriend. Tr. 858, 1069, 1143-44. Dr. Luna also opined that Youngs could engage in work-

---

[5] Youngs argues that he did not testify that he could pay bills and use the internet. ECF No. 11-1 at 19.

The record contains conflicting evidence as to whether Youngs can pay bills. Youngs testified that his mother gives him an allowance that "goes toward [his] bills" but also that he could not pay his bills without assistance. Tr. 43-44, 46. In 2014, Dr. Luna indicated that Youngs could manage his own money, but in 2016 she indicated that Youngs's mother managed his money and that he could not manage his own funds "due to distractibility and a lack of experience." Tr. 858-59, 1143-44.

As for surfing the Internet, it appears that the ALJ was mistaken because Youngs did not discuss that in his testimony. He did, however, report to Dr. Luna in 2016 that he spends his days "surfing the Internet." Tr. 1148.

These slight discrepancies do not undermine the ALJ's ultimate finding as to Listing 12.05C and, as noted previously, it was up to the ALJ to resolve evidentiary conflicts like these.

related activities like following and understanding simple instructions, performing simple and complex tasks independently, maintaining a regular schedule, learning new tasks, and making appropriate decisions. Tr. 858, 1144.

Accordingly, for all the reasons stated, substantial evidence supports the ALJ's conclusion that Youngs did not have deficits in adaptive functioning as Listing 12.05C required. *See, e.g.*, *Gonzalez-Cruz*, 294 F. Supp. 3d at 186-87 (plaintiff did not suffer deficits in adaptive functioning where he lived alone, cared for himself, used public transportation, and maintained social relationships even though he had little education, could not read or write, and suffered memory deficits); *Gross v. Comm'r of Soc. Sec.*, No. 1:16-CV-0723 (CFH), 2017 WL 2574015, at *5-6 (N.D.N.Y. June 14, 2017) (plaintiff did not suffer deficits in adaptive functioning where he could perform personal care, cook, clean, shop, do laundry, and lived alone even though he was in special education, could not drive, and had difficulty managing money); *Trimm v. Comm'r of Soc. Sec.*, No. 7:15-CV-1006 (GTS/WBC), 2016 WL 7414531, at *6 (N.D.N.Y. Dec. 2, 2016) (plaintiff did not suffer deficits in adaptive functioning where he could care for his personal needs, cook, clean, do laundry, shop, travel alone, and play video games even though he was in special education classes and did not complete high school).

### 2. The Appeals Council's Denial of Review

Youngs also argues that, because it declined to review his case on December 5, 2017, the Appeals Council had to consider his application under the revised mental disorder Listings that became effective on January 17, 2017. ECF No. 11-1 at 20-24.

Although Youngs asserts that the Appeals Council erred because it "did not make specific findings" under the Revised Listings, no such requirement exists. The Appeals Council will review a case if:

9

1. it appears that the ALJ abused his discretion;

2. there is a legal error;

3. the ALJ's actions, findings, or conclusions lack substantial evidence;

4. there is a broad policy or procedural issue that may affect the public interest; or

5. the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the ALJ's decision, there is a reasonable probability that the additional evidence would change the outcome of the case, and the claimant shows good cause for not informing the SSA about or submitting the evidence sooner.

20 C.F.R. § 416.1470(a)-(b). None of these circumstances suggest that the Appeals Council must review a case under new Listings merely because they change after an ALJ renders his decision.

When the SSA revised the mental disorder Listings, it stated that the new Listings would be effective January 17, 2017, but it is ambiguous as to which cases they apply. The SSA indicated that it would apply the new Listings "to claims that are pending on or after" the effective date, which means that they apply to "any case in which [it] make[s] a determination or decision." *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, at 66138 & n.1 (Sept. 26, 2016). Youngs's case was certainly "pending" before the Appeals Council when the Listings changed, but it is unclear whether the Appeals Council made a "determination or decision" when it declined to review Youngs's case. In any event, the SSA did not indicate that the new Listings apply to claims pending at all stages of the administrative review process or suggest that the Appeals Council had to make specific findings under the revised Listings when reviewing a claimant's appeal.

Moreover, Youngs does not argue that the evidence he submitted to the Appeals Council undermines the ALJ's decision or that he is entitled to benefits under the revised Listings;[6] he

---

[6] In a footnote, Youngs contends that the Appeals Council's "procedural error is sufficient to warrant remand" but that he "also asserts that he is entitled to Social Security benefits under the revised [Listings]." ECF No. 11-1 at 20

simply asserts that the Appeals Council had to analyze the revised Listings, an assertion that the regulations and caselaw do not support. Accordingly, for all the reasons stated, the Appeals Council did not err.

However, even if the Appeals Council erred by not considering the revised version of Listing 12.05, any error is harmless because the evidence does not suggest that Youngs suffers the requisite deficits in adaptive functioning. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration." (alterations and citations omitted)).

Revised Listing 12.05 has two paragraphs—A and B—both of which require the claimant to have, among other things, "significant deficits in current adaptive functioning." *See* 20 C.F.R. Part 404, Subpart P, App'x 1 at § 12.00H1.

Under paragraph A, the SSA considers the claimant's dependence on others to care for his personal needs, such as eating and bathing. *Id.* § 12.00H3a. The record evidence does not indicate that Youngs struggled in this regard.

Under paragraph B, the SSA considers whether the claimant has an extreme limitation in one or a marked limitation in two of the following categories: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 12.00H3a, 12.00E, 12.00F. The evidence does not suggest that Youngs suffers the requisite limitations in any of these categories.

---

n.8. Youngs describes the requirements of the revised Listings, but he does not cite any record evidence to support his contention that he is disabled under those Listings. *Id.* Moreover, it is well-established that the Court need not consider arguments made only in footnotes. *Lawrence v. Berryhill*, No. 1:17-CV-01251(JJM), 2019 WL 2521181, at *3 n.6 (W.D.N.Y. June 19, 2019) (citation omitted).

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is GRANTED and Youngs's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 15, 2019
       Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            Chief Judge
                                            United States District Court